(No. 83-CC-028█

DOROTHY WILLIAMS, Independent Administrator of the Estate of Benjamin Bradford Jones, Deceased, Claimant, v. THE STATE OF ILLINOIS, Respondent.

*Opinion and Order filed March 21, 1985.*

R. CORYDON FINCH, for Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E. WEBBER, Assistant Attorney General, of counsel), for Respondent.

MONTANA, J.

This claim arises out of a tragic accident which occurred on August 9, 1982, in Anna, Illinois. On that date Donald Charles Meeker was a committed patient at the Anna Mental Health and Developmental Center at Anna, Union County, Illinois. Meeker escaped unmolested and unrestrained from the grounds in a taxi, which he had called from Anna, and went to a shopping center in Anna. He promptly obtained a knife and brutally murdered a 73-year-old retired Pentecostal minister named Benjamin Bradford Jones in the shopping center parking lot.

The decedent's daughter, as administrator, brought this action in five counts alleging that the State was guilty of negligence, or wilful and wanton conduct, in (1) permitting Meeker to escape from the Anna Mental Health Center; (2) in failing to know that Meeker had been transferred to the minimum security Anna Mental Health Center; (3) in transferring Meeker to a minimum security institution; (4) in failing to provide sufficient security for Meeker at the Anna Mental Health Center; (5) in permitting Meeker to have a "grounds pass", thereby enabling Meeker to escape; (6) in failing to keep Meeker in a maximum security enclosure; and (7) in

permitting Meeker to have access to telephone communications to aid in his escape.

Respondent argues that it owed no duty to Claimant and that therefore negligence is not an issue. Respondent fails to distinguish the case of *Eichen v. State* (1975), 31 Ill. Ct. Cl. 6, or *Malloy v. State*, 18 Ill. Ct. Cl. 137. These cases are controlling.

The *Eichen* case presented a claim for damages to a sawmill that was burned down by a ward of the Illinois Department of Children and Family Services. The Court found that the facts in that case supported Claimant's contention that Respondent was negligent in failing to exercise a reasonable degree of foresight in light of Respondent's ward's past record of violent tendencies. In the *Malloy* case, Claimant was attacked in her store on November 1, 1946, by an escapee from the Illinois Security Hospital at Menard, Illinois, an institution for the criminally insane operated by Respondent. The inmate had been convicted many times of charges relating to burglary, larceny, robbery, carrying concealed weapons and murder.

After discussing the facts of the case, the Court held as follows:

The injuries and damages to Claimant hereinabove set forth were substantially caused by the Respondent's negligence. But for the negligence the Claimant would have suffered no harm. No new element contributes to her harm additional to the existing factors of the situation under which the Respondent's conduct we deem was negligent. The injuries suffered by Claimant could have been prevented by the duty of care which the defendant violated.

In the case at bar, the evidence makes it clear that

Respondent's agents should have known of Meeker's dangerous propensities. The information compiled in Meeker's file was voluminous and pointed to the conclusion that Meeker represented a real and continuing threat to persons with whom he may come in contact. Notwithstanding this information, Respondent permitted Meeker to be placed in a minimum security situation at the Anna Mental Health Center where he was permitted to obtain, and did obtain, grounds privileges and the means for effecting escape.

Information available to staff concerning Meeker's potentially dangerous nature included the following:

1. A memorandum dated December 7, 1978, from Dr. Clarence Novak to Assistant Warden Riegel of the Department of Corrections warned that Meeker was a danger to himself and others and recommended an emergency medical transfer to Menard Psychiatric Division.

2. A Menard Psychiatric Center Program Treatment Plan dated April 12, 1979, by Robert L. Andresen, a Correctional Counselor, which described Meeker as "a very dangerous young man."

3. A Menard Psychiatric Center Quarterly Review by Robert L. Andresen, Correctional Counselor III, dated March 3, 1980, which characterized Meeker as one of the most potentially dangerous persons if he were in a free society.

4. A treatment plan dated 8/22/80 by Counselor Margaret Waymen stating that Meeker's behavior was difficult to predict.

5. A certificate of examination by Dr. J.A. Pichardo dated May 23, 1981, in which Pichardo opined

that Meeker was mentally ill and could be reasonably expected to inflict serious harm upon himself or another.

6. Union County Circuit Court cause 82-MH-152 *In the Matter of the Mental Illness of Donald Meeker*, where a petition for involuntary admission was filed May 20, 1982, alleging that Meeker was mentally ill and reasonably expected to inflict serious physical harm upon himself or another in the near future.

7. A certificate of examination by Dr. C. Willsen, a psychologist, dated May 18, 1982, stating that Meeker was mentally ill and reasonably expected to inflict serious physical harm upon himself or another in the near future in that Meeker remained chronically psychotic with major thought disorders.

8. A further certificate filed May 20, 1982 by Elizabeth Auld, M.D., setting forth the opinion that Meeker was mentally ill and reasonably expected to inflict serious physical harm upon himself or another in the near future and was distinctly paranoid.

9. The testimony of Dr. David J. Warshauer in cause 82-MH-152 in the Union County Circuit Court that Meeker was a paranoid schizophrenic and that because of his mental illness, could reasonably be expected to inflict serious physical harm upon himself or other people.

In a final summary of the "unusual incident" report prepared by the Superintendent of the Anna Mental Health facility, it was concluded that Meeker's treatment staff, at the time of the death of Benjamin Bradford Jones, were not aware of Meeker's homicidal tendencies, notwithstanding the fact that those tendencies and past overt actions of Meeker were part of the clinical record, which was available on the unit. The staff's

ignorance of Meeker's homicidal tendencies stemmed simply from the fact that they did not review Meeker's record from the beginning of his hospitalization. Under these circumstances Respondent may not escape liability by suggesting that Meeker's recent conduct was not indicative of severely dangerous propensities. There is no question that Respondent has a duty, in situations such as presented in the case at bar, to protect the public from known propensities of persons within the control of State institutions.

Based on the foregoing allegations of negligence, Counts II and IV of Claimant's complaint sought exemplary and punitive damages against Respondent arising out of the death of Benjamin Bradford Jones. The liability of the State in this cause is founded on Illinois Revised Statutes, chapter 23, section 4041. This statute is in derogation of common law and provides the exclusive remedy available to Claimants. This act does not authorize this Court to assess exemplary and punitive damages against Respondent. Therefore Counts II and IV of Claimant's complaint must be denied.

Count I of Claimant's complaint sought an award of compensatory damages for pain and suffering experienced by the decedent. The Illinois Supreme Court has held in *Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 436 N.E.2d 623, that an administrator may assert a cause of action for pain and suffering of the decedent even where the decedent suffered only a short time. The duration of pain and suffering affects the amount of damages, not the administrator's ability to recover such damages.

In the instant case, evidence showed that decedent's pain and suffering was substantial. Decedent suffered at least 30 stab wounds to the chest and neck. There were

multiple wounds to the hands and arms of the decedent apparently resulting from decedent's having attempted to defend himself against the attack. After having escaped from the vehicle in which the attack took place, decedent was heard to groan and was kicked by Meeker while decedent was lying on the ground. Decedent was conscious when medical technicians arrived on the scene and was alive in the ambulance on the way to the hospital. It was during the trip to the hospital that decedent expired. The evidence established that although decedent's suffering was of relatively short duration, it was none the less excruciating and horrendous. The number of wounds inflicted upon the decedent's body indicate the more than brief struggle with Meeker. It is the opinion of this Court, based upon the facts in this case, that Claimant should be awarded the sum of $25,000 compensatory damages for pain and suffering experienced by the decedent.

Count III of the complaint for wrongful death sought awards for loss of support, consortium and services. Decedent was 73 years old at the time of his death and his life expectancy was 8.9 years. At the time of decedent's death, he was receiving $410 in monthly Social Security benefits and a pension of $200 per month from his retirement as a United Pentecostal minister. Combined with Mrs. Jones' Social Security benefits of $202, their total monthly income was $800, all of which was used for daily living expenses. As a result of decedent's death, the pension has terminated and, after considering the net increase received by decedent's widow, after his death the aggregate loss of support amounts to $4,800 per year.

In addition, the evidence showed that decedent performed many household services including cleaning,

washing, cooking, plumbing, carpentry and electrical repairs. It would appear that the weekly services performed by decedent could not have been performed in less than two eight-hour days per week. At an hourly value of $5.00 per hour, this amounts to $4,160 each year over a life expectancy of 8.9 years, or $37,024. This sum combined with the loss of $42,720 in real income totals $79,744.

Finally, Claimant is entitled to recover her funeral expenses in full.

Although said damages total $108,526.45 this Court is limited by section 8 of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.8(d)), to an award not to exceed $100,000. Based upon that limitation, it is hereby ordered that Claimant Dorothy Williams, as independent administrator of the estate of Benjamin Bradford Jones, be awarded the sum of $100,000.00.